The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our first case of the day. I'm going to call the roll. 2 0 2 2 2 1 0 2 2. You know, excuse me. That's the wrong number. 4 21 0 2 2 2. We counsel and it's people versus what state of Illinois versus Woodrow Brown. Would counsel for the appellate, please. Give us your name. Mariah Shaver. Thank you, Ms. Shaver. And for the appellate. Douglas Malcolm. Thank you. You may proceed. Thank you, Your Honor. May it please the court, counsel. Good morning. On behalf of the Office of the State Appellate Defender, my name is Mariah Shaver and I represent Woodrow Brown. After learning that a well meaning friend had filed a post conviction petition in his case, Woodrow Brown immediately filed a motion explaining he had not filed that petition and seeking to have the judgment vacated. Despite the fact that there was no dispute that Ann Ogwell had actually filed the petition, the court denied Woodrow's motion. When Woodrow then filed his own post conviction petition, the court treated it as a successive petition, which it denied him leave to file. Because it would be inconsistent with the purpose of the Post Conviction Hearing Act for Woodrow to lose his right to file a PC because an unauthorized petition had been filed in his case. Woodrow's January 17 petition should have been treated as an initial petition. Because the trial court failed to rule on that petition within 90 days, this case should be remanded for second stage proceeding. The threshold question in this case is whether the post conviction petition Ann Ogwell filed on June 13 fulfilled the act's purpose of allowing Woodrow to raise constitutional issues related to his conviction and sentence that could not have been determined on direct appeal. Because Woodrow did not get to raise any of his own claims in Ann's petition, the answer is no. The first step of the inquiry is determining if Woodrow filed the June petition. The state has not challenged either before this court or the trial court that Woodrow's friend Ann actually filed that petition. Likewise, the trial court appeared to accept that Ann had filed the June petition, both at the hearing on the motion to vacate and again when it found Woodrow had established cause to file a PC. And there's no reason to question Woodrow's explanation. The record shows the June petition had a postmark from Urbana, while Woodrow was housed in Mount Sterling, and the postmarks on his other letters reflect the Mount Sterling zip code. The envelopes from Woodrow also reflect they were sent by an inmate in the Department of Corrections, but the envelope the June petition arrived in does not. And the handwriting on the June petition and the envelope it arrived in is inconsistent with Woodrow's other handwritten filings. Woodrow also said he recognized the phone number under the signature line as Ann's. Consistent with that, the email address below the phone number is the first letter of Ann's first name, followed by her last name at gmail.com. The June petition also refers to Woodrow in the third person as if someone else had written it. And most importantly, Ann provided an affidavit confirming she filed the petition without Woodrow's knowledge or consent. As soon as Woodrow learned that a PC had been filed in his case, he filed a motion explaining he did not file it, or even know what had been filed, and asked that the judgment be vacated and he be allowed to file his own actual petition. The next step of the inquiry is deciding whether Ann has the authority to file the June petition. Looking to the language in the act, the statute provides only one petition may be filed by a petitioner. The only reasonable interpretation of the statutory language is that only the petitioner or his authorized agent can file a PC. Ann was not the petitioner in this case, or his lawyer, and though it appears she was only trying to help, she was not authorized to file anything on Woodrow's behalf. Because the June petition was filed without Woodrow's authority, and the act specifies that only a petitioner can file a PC, Ann's petition should be considered a nullity. The state argues that Ann's PC is not a nullity because 1. the proceedings on her petition were not deficient, and 2. that Ann's petition did not prevent Woodrow from collaterally attacking the proceedings because the trial court reached the merits of his actual petition. First, the fact that Ann wasn't authorized to file a petition on Woodrow's behalf is what makes her petition a nullity. Second, by treating the petition Woodrow actually filed as a successive petition, the court reviewed the merits of his claims under the more stringent cause and prejudice standard applicable only to successive PCs. To advance to the second stage, an initial petitioner only needs to present the gist of a constitutional claim. After establishing an arguable constitutional violation, a petitioner can have counsel appointed to help him fully present his claims before he has the burden of making a substantial showing of that violation. But for a successive PC to advance, the petitioner needs to establish cause and prejudice for failing to raise the claim earlier. This is a much more exacting standard. In order to advance to the second stage under the initial petition standards, Woodrow only needed to establish that it was arguable his attorney's performance was unreasonable and that it was arguable that he was prejudiced by counsel's performance. But by reviewing Woodrow's petition as a successive petition, the trial court reviewed his claims to determine if he had actually established prejudice before he had the opportunity to have counsel appointed to help him fully present those claims. Having his claims reviewed under the more stringent cause and prejudice standard denied Woodrow the opportunity to have those claims reviewed under the proper standard for a pro se petitioner filing an initial petition. The final step of the inquiry is determining whether Anne's petition allowed Woodrow to effectively present his claims. Because Anne's petition did not raise Woodrow's actual claims, treating her petition as his initial PC effectively denied Woodrow his right to present his claims for review under the more relaxed standard applicable to an initial petition. The state argues that Woodrow's petition was properly treated as a successive petition because the facts of this case are distinguishable from Little and Taylor. The state distinguishes this case from Little by arguing that the initial PC in that case only sought to regain the right to a direct appeal, and that is not what Anne's petition sought to accomplish. The state also alleges this case is distinguishable from Taylor because the threshold issue there was whether a finding of mootness was akin to a finding that the petition was frivolous or patently without merit, whereas here there is no dispute that the trial court entered a final judgment on the merits of Anne's petition. But the state overlooks the critical fact that Woodrow did not file a June petition, so he did not have a chance to raise any of his constitutional claims in that petition. At the end of the day, both the Little and Taylor cases were remanded for the petitioners to have their second PCs treated as original petitions because, like Woodrow, they had not had a complete chance to raise their constitutional claims in the first PC filed in their cases. Because Anne did not have the authority to file a petition in this case, and because treating her petition as Woodrow's initial PC denied Woodrow the chance to have his claims reviewed under the correct standard for an original PC, the trial court should have vacated the order dismissing her petition and stricken her PC from the record. And, pursuant to the reasoning in Little and Taylor, the petition Woodrow filed should have been reviewed as his initial petition. As the state concedes, it is mandatory that the trial court rule on a first stage initial PC within 90 days, and when that does not happen, the petition must advance to the second stage. This is true even where the court disposes of a PC on the erroneous belief that it was a successive petition. Because Woodrow's January petition was his initial petition, and it was not rolled out within 90 days, this court should remand for second stage proceedings. If there are no questions from the court, we're asking this court to reverse the trial court's dismissal of the petition Woodrow actually filed, and remand the matter for second stage proceedings, starting with the appointment of counsel. Thank you. Thank you, counsel. Mr. Malcolm. Thank you, Your Honor. May it please the court? Counsel? This case presents two issues. First, whether the trial court properly treated defendant's June 13th postconviction petition as an initial petition. And second, whether the trial court properly denied defendant leave to file a successive postconviction petition when defendant's January 17th postconviction petition failed to establish prejudice. For the following reasons, the state requests that this court affirm the trial court's judgment. First, defendant was convicted following trial of aggravated battery with a firearm and aggravated discharge of a firearm. On direct appeal, this court affirmed the trial court's judgment, finding that defendant did not receive ineffective assistance of counsel. On June 13, 2018, the final day for the defendant to file a postconviction petition, a postconviction petition was filed bearing defendant's name, purported signature, and it argued that defendant received ineffective assistance of counsel and that he acted in self-defense due to the victim's alleged violent history. The trial court dismissed this petition for failure to state the gist of a constitutional claim, and defendant filed a motion to vacate, arguing that he did not file the June 13th petition. On the hearing, on the motion to vacate, the record indicates that the trial court did not believe that the defendant did not file the June 13th petition. Counsel, we know the procedural history of the case. What I would like for you to get to or to answer is defendant didn't file a petition. That's not even contested. He didn't file it. Why would a court say, well, you're stuck with this interloper who filed it on your behalf, whether they were well-meaning or whatever their reason was, and I'm guessing the person, though the record may not show it, the person is not a lawyer. They're not affiliated with John Marshall Law School. So you're going to argue to the court that that counts. So a false pleading that was not authorized to be filed somehow overarchingly destroys or negates the client's rights to file a post-conviction petition of his own. How do you do that? The state recognizes that it has forfeited the argument that the defendant did not file the June 13th post-conviction petition. However, this court may affirm the trial court's judgment on any basis that is supported by the record. This court could find that the record supports the conclusion that defendant did indeed authorize the filing of the June 13th post-conviction petition and thereby the... We could find that? That is the state's position. If we don't find that, are you conceding that the state's position is wrong? The June 13th post-conviction petition did collaboratively attack the defendant's trial wherein defendant was convicted. Both people v. Taylor and people v. Little, which the defendant relies upon, ultimately determined that because the first post-conviction petition that was filed did not provide the defendant with the opportunity to collaboratively attack the proceedings below. They should not have been treated as an initial petition. The state contends that the June 13th post-conviction petition that was filed did collaboratively attack the trial courts, the trial below, wherein defendant was convicted. And because it provided the defendant the opportunity to collaterally attack, and the state notes that the June 13th argument closely resembles the January 17th post-conviction petition argument, both argue that defendant received ineffective assistance of counsel because counsel failed to present specific evidence undercutting the victim's testimony, and that defendant acted in self-defense based on the victim's alleged history of violence. Counsel, I have a question for you. At the motion to vacate, didn't the trial court confirm to Mr. Brown that he would have an opportunity to file a new initial petition? Not a new initial petition, Your Honor, but another petition. Now, the trial court did say that defendant could argue that the trial court should treat the second petition as an initial petition, but that admonition to the defendant is not the same as a concession that the defendant would have the chance to file another initial petition. Instead, the trial court advised the defendant that he could file a second post-conviction petition, could argue that the argued cause and prejudice, and if defendant so desired, argue that the second petition should be treated as an initial petition. But I believe to answer your question most directly, no, Your Honor, the trial court did not tell defendant that he could simply file another petition, and that it would automatically be treated as an initial petition. Counsel, the courts that indicate that a defendant must be allowed one complete opportunity to show substantial denial of his constitutional rights. Can you just explain to us how in this circumstance you believe that black letter law can be complied with? How is he, defendant here, being given one complete opportunity to show substantial denial of his constitutional rights under the theory that you're putting forth? Certainly, Your Honor, the state contends that the June 13 post-conviction petition was a representation of the defendant's argument, that it collaterally attacked the proceedings below by arguing that defendant received ineffective assistance of counsel, as is mirrored in defendant's January 17 post-conviction petition. And there, because of this, the defendant was provided the opportunity to collaterally attack the proceedings below, as he raised the very same post-conviction petition argument in the June 13 petition that he raised in his January 17 petition. Thank you. Thank you, Your Honor. This case is distinguishable from both the Second District's recent finding in People v. Taylor, as the People v. Taylor court distinguished between a first post-conviction petition that was denied for mootness versus one that was denied for either failure to say the gist of a constitutional claim or the frivolous or patently without merit. The Second District determined that because the first post-conviction petition that was filed by the Taylor defendant was dismissed for mootness, it should not have been treated as an initial post-conviction petition. As the court knows, in this case, the June 13 post-conviction petition was dismissed on its merits as failing to state the gist of a constitutional claim. Therefore, this court should affirm the trial court's judgment. But as this court's questions have already astutely pointed out, the Taylor court went on to note that even if the initial petition there was not filed or was not dismissed for mootness, it should not have been treated as an initial petition in that particular instance because it did not provide the defendant in Taylor the opportunity for a complete collateral attack on the proceedings which resulted in his conviction. For the reasons which I have previously stated, the June 13 post-conviction petition provided the defendant the opportunity to collaterally attack the proceedings below, which defendant did, by arguing that did you find any case in any area of the law where a stranger to the litigation, who was not a lawyer and had no affiliation with a legal clinic or lawyers at a law school that might have been helping someone at a particular time, where that was viewed as a complete chance to state your case? For example, in a civil case, if a stranger to the litigation filed an answer, admitting all the allegations as a complaint, do you think a trial court, once it found out that that was a stranger to the litigation, and that the lawyer for the defendant or the defendant or the hospital or whoever it might be, had no knowledge of it, that that would count as an answer to a complaint? No, Your Honor. And if this court determines that the June 13 petition was indeed neither filed by defendant nor filed with defendant's authorization, then the state recognizes that remand for second-stage post-conviction proceedings is warranted, because the June 13 petition was not an opportunity by the defendant to collaterally attack the proceedings below. The state contends, as I believe I said before, that this court could find, that the record supports, that the June 13 petition was either filed by defendant or filed with his support, and therefore it was the opportunity to collaterally attack the proceedings below. However, if this court does not reach that conclusion, then the state recognizes that the defendant's argument is meritorious, and the January 17 petition should have been treated as the initial petition. Thank you for your answer. Thank you, Your Honor. The proceedings, the state contends that these proceedings were also distinguishable from People v. Little, as the People v. Little 5th District Court case noted that where proceedings are considered virtual nullities, specifically, a virtual nullity is where, quote, the proceedings on the original petitions were deficient in some fundamental way, end quote. That's from a People v. Free and Illinois Supreme Court case from 1988. In the instant case, the proceedings on the June 13 petition were not virtual nullities. Virtual nullities have been found where, for example, a defendant alleged that he suffered from insanity and requested the aid of counsel in order to form and submit a post-conviction petition, but that defendant was denied the assistance of counsel. Additionally, in post-conviction cases where post-conviction counsel makes no effort to make the necessary pro se amendments or makes their amendments to the pro se petition, those have also been found as instances where the proceedings were fundamentally deficient to the point that they were virtual nullities. That was not the case here. The state contends that the defendant received the opportunity to collaterally attack his trial below by either filing the June 13 petition or having it filed by somebody authorized by him. And when the defendant filed his motion to vacate, the record indicates that the trial court did not believe him as the trial court had the opportunity to grant the motion to vacate and do away with the June 13 post-conviction petition. However, the trial court chose not to do so. For these reasons, the proceedings on the June 13 petition were not fundamentally deficient and therefore not a virtual nullity. Thank you, Mr. Malcolm. Are you finished? I could address the second issue, but if this court is content, I am done with issue number one. Well, counsel, I think you need to decide that. Very quickly, regarding issue number two. If this court finds that the January 17 petition was a successive post-conviction petition, the trial court did not err in dismissing it for failure to demonstrate prejudice. As this court found on direct appeal, the trial counsel, his allegedly deficient performance, did not prejudice defendant because even if the evidence which defendant argued should have been presented at trial was presented, that defendant could not prevail on his self-defense claim because the victim was fleeing defendant and the victim was unarmed at the time the defendant shot him. So even if the evidence that defendant argues in his January 17 petition was presented, he cannot prevail on his self-defense claim. Therefore, the January 17 post-conviction petition failed to demonstrate the prejudice wrong of the cause and prejudice test. For the reasons that I have stated, this court should affirm the trial court's judgment. Thank you, counsel. Ms. Shaver, rebuttal? Thank you, Your Honor. The record here does not support a finding that Woodrow authorized the filing of the June petition. The trial court thought it didn't have the authority to vacate that petition, but of course it did. The problem here is that Woodrow did not file the June petition, and he has not had a complete opportunity to have his claims regarding his constitutional violations reviewed under the GIST standard or to have the opportunity to have counsel help him fully present those claims. It's just simply not apples to apples. There needs to be a mechanism to protect criminal defendants from losing their statutory right to file a post-conviction petition where someone makes an unauthorized filing in their case. Our position is that the trial court did indicate Woodrow can file an original PC, even if the court thought that he was supposed to file a successive PC, that doesn't make it correct and that doesn't impact this court's inquiry. For those reasons, we're asking that this case be remanded for second stage proceedings. Thank you. Thank you, counsel. We'll take the matter under advisement. Thank you for your arguments.